UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

Angela Blance,                )
                              )
    *Plaintiff*,           )
                              )
v.                            )    No.: 3:12-CV-579-PLR-HBG
                              )
ARC Automotive, INC.,         )
                              )
    *Defendant*.           )

## MEMORANDUM OPINION

Angela Blance was a general machine operator at ARC Automotive for more than ten years. In 2010, after Ms. Blance had exhausted all available FMLA leave and accumulated numerous absences, ARC fired her based on an attendance policy in the collective bargaining agreement between ARC and Ms. Blance's union. Ms. Blance, who is African American, contends that similarly situated white employees were treated differently than her. Accordingly, she asserts claims under both Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act. ARC has moved for summary judgment, arguing that the Tennessee Human Rights Act claims are time barred, and that the undisputed material facts establish that her Title VII claim fails as a matter of law. ARC is correct, and its motion will be granted.

I.

ARC hired the plaintiff in 1999 as a machine operator.[1] The plaintiff was a member of Unite Here, a union that represents the employees of ARC's Knoxville manufacturing plant. Her employment with ARC was subject to a collective bargaining agreement between Unite and ARC (the "CBA"). ARC and United originally entered into the CBA in 2007, and it remained in

---

[1] These facts, taken from the defendant's statement of undisputed facts. [R. 20]. They are all undisputed by the plaintiff. [R. 25, Plaintiff's Response to Statement of Undisputed Facts].

effect until a new CBA was signed in March 2011. Under the CBA, ARC maintained an attendance policy that provided rules for when an employee was to be assigned an "occasion" that would be counted toward formal discipline and termination. An employee who accumulated nine occasions in a twelve month period would be terminated.

Under the attendance policy, an employee who missed time for a medical reason would be assessed one occasion for an absence if the employee provided ARC with a doctor's note that covered the entire period of absence. That means an employee who missed three days of work with the flu who presents a doctor's note would only receive one occasion to cover all three days. On the other hand, if the employee failed to produce a doctor's note, the employee would receive one occasion for each shift missed. Under the flu example, if the employee failed to produce a doctor's note, the employee would receive three occasions for the three days missed.

The attendance policy states in pertinent part, that "[a]ll absences, regardless of reason, will be considered an occasion except those defined as excused . . . below." Excused absences that "are not considered occasions are not subject to the corrective action outlined in the attendance program." Such absences included FMLA leave, vacation, and other statutorily protected leave. The ARC policy also contains an exception for "disability absences," which do not count as occasions. Disability absences are defined as medical absences that are approved for weekly sickness and accident benefits by Met Life, the company's short-term disability insurance provider.

MetLife makes preliminary decisions on awarding short-term disability benefits, but ARC retains the authority to enforce the CBA and its attendance policy. Accordingly, ARC expects MetLife to make short-term disability benefit decisions consistent with the CBA. Under the terms of the CBA, an individual must work 30 days after a period of short-term disability

2

leave to be eligible for a second period of short-term disability leave related to the same illness or injury.

At the beginning of October 2010, the plaintiff had 6.5 occasions under ARC's attendance policy (leaving work early counts as half an occasion). On October 4, 2010, she called in to work and reported that she fell at home, hurt her knee, and would not be at work for several days. Her medical records show that the x-ray of her knee was negative, there was no swelling, bruising, or effusion. The plaintiff was instructed by the doctor to ice her knee and take pain medication (Vicodin). The plaintiff exhausted all of her available FMLA leave on October 9, 2010, but she remained out of work until October 14. She received one occasion for this extended absence.

After being encouraged to do so by ARC's nurse and Unite's president, the plaintiff applied for short-term disability benefits with MetLife. On November 1, 2010, she was approved for benefits for the absence relating to her knee injury. ARC removed the occasion point previously awarded for that absence because it was now classified as short-term disability leave. Less than two weeks later, the plaintiff left work early, earning half a point, and bringing her total up to seven occasions. In early November, the plaintiff was verbally warned for accumulating seven attendance occasions over the past 12 months.

The same day she was warned about her occasions, the plaintiff requested a personal leave of absence that carries one attendance occasion. The request was denied. The plaintiff then requested a temporary lay-off. That was also denied. The next day, the plaintiff called into work sick, claiming she had a stomach virus. This occasion brought her total up to eight – a fact readily admitted by the plaintiff. Finally, on November 8, 2010, the plaintiff called into work again, reporting that her knee was bothering her, that she had gone to the emergency room, and

3

that she going to stay out of work for a few days. This absence was the plaintiff's ninth occasion. Accordingly, the plaintiff was subject to termination unless her November 8, 2010, absence qualified for short-term disability leave.

> The CBA states, with respect to short-term disability coverage that:
>
> Coverage shall commence on the first day, in the case of a nonoccupational accident or hospitalization, on the eighth day in the case of a nonoccupational illness, for a maximum period of twenty six (26) weeks. An employee must work 30 consecutive work days between successive disability periods for the same or similar condition.

[R. 20, Statement of Undisputed Facts, Page ID 109]. The plaintiff obtained short-term disability relating to her knee injury to cover her absence between October 4 and October 14, 2010. Less than 30 days later, on November 8, 2010, the plaintiff missed work, earning her ninth occurrence. Because she had not worked for 30 consecutive work days between the knee-related absences, ARC determined that the plaintiff was not eligible for short-term disability under the plain terms of the policy, awarded the plaintiff a ninth point, and terminated her effective November 15, 2010.

The evening of her termination, the plaintiff called MetLife to request additional short-term disability benefits related to her knee injury. Two weeks later, MetLife approved the plaintiff for additional short-term disability benefits from November 8, 2010, through December 5, 2010, relating to the same condition for which MetLife had approved benefits in October 2010. MetLife's approval letter inexplicably references "Siemens" as the plaintiff's employer. There is no explanation for why MetLife approved the plaintiff for benefits despite the plaintiff not working 30 days between disability periods.

On November 29, the same day MetLife approved the plaintiff's request for additional short-term disability benefits, she filed a grievance of her termination in accordance with the

4

CBA. ARC held a grievance hearing. The plaintiff was represented by leadership from Unite. ARC denied the plaintiff's grievance based on the plaintiff's ineligibility for short-term disability leave, and afterwards the union did not request arbitration as it was entitled to under the CBA.

The plaintiff did not allege in her grievance that her termination was because of her race. The plaintiff did not file a complaint of racial discrimination with the company related to her termination. Nobody at ARC mistreated the plaintiff because she took time off for disability or other protected leave, and the plaintiff admits that she had no issues with her supervisors while she worked for ARC. The plaintiff filed this lawsuit on November 6, 2012. After conducting discovery, ARC moved for summary judgment on December 17, 2014.

II.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id*. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III.

*A. Tennessee Human Rights Act Claims*

The plaintiff's claims under the Tennessee Human Rights Act are barred by the statute of limitations. The plaintiff filed her complaint on November 30, 2012, but the last discriminatory act alleged by the plaintiff was her termination, which occurred on November 15, 2010—over two years earlier. The statute of limitations for Tennessee Human Rights Act claims is one year, and the limitations period is not tolled by filing an EEOC Charge. Tenn. Code Ann. § 4-21-

6

311(d); *Martin v Boeing-Oak Ridge Co.*, 244 F. Supp. 2d 863, 872 (E.D. Tenn. 2002). ARC's motion for summary judgment will be granted with respect to these claims.

B.  *Title VII Claims*

To establish a *prima facie* case for racial discrimination, a plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that a similarly-situated employee outside the protected class was treated more favorably than she. *Younis v. Pinnacle Airlines*, 610 F.3d 359, 363 (6th Cir. 2010). If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant does so, then the burden shifts back to the plaintiff to prove that the proffered reason was actually a pretext to hide unlawful discrimination. *Michael v. Caterpillar Financial Services Corp.*, 469 F.3d 584, 593 (6th Cir. 2007).

Both parties agree that the first three elements of the plaintiff's *prima facie* case are satisfied. The plaintiff is a member of a protected class, she was qualified for her job as a machine operator, and she was terminated. The only dispute is whether similarly situated employees were treated more favorably than the plaintiff. In her complaint, the plaintiff identifies a number of white employees who applied for and were approved for short-term disability. According to the plaintiff, the identified white employees were "allowed to complete [their] short term disability," whereas the plaintiff was "terminated prior to the expiration of her short term disability." [R. 1, Complaint, Page ID 5].

The plaintiff's comparisons are misplaced. The plaintiff herself applied for and received short-term disability benefits for her knee injury less than a month before her termination.

7

Because she was found to be eligible for short-term disability leave on account of her knee injury, ARC retroactively removed the occasion point for the October absence. After returning to work from her short-term disability period in mid-October, the plaintiff did not work a full 30 days prior to further absence. Her November absence was therefore not eligible for short-term disability leave under the plain terms of the CBA. The plaintiff has not pointed to any admissible evidence in the record of other employees who returned to work after a short-term disability absence, worked less than 30 consecutive work days, and were approved for a second short-term disability absence based on the same injury or illness (in apparent contravention to the CBA). While this is a fairly narrow field for possible comparators, to broaden the description to include any individuals who applied for and received short-term disability leave would include the plaintiff as her own comparator on account of her approved leave in October 2010, for which the plaintiff did not receive an occasion point.

The fact that MetLife approved the plaintiff's November application for short-term disability benefits does not change this result. In her response, the plaintiff states that "[i]t is highly unlikely that MetLife made a mistake." [R. 24, Plaintiff's Response, Page ID 748]. This is because, according to the plaintiff, MetLife wrote the policy,[2] and MetLife paid particular attention to this request for benefits because one of ARC's employees called MetLife to tell them that they may receive what ARC believed to be a fraudulent request for benefits from the plaintiff.[3] [*Id.*]. But, as the plaintiff acknowledges in her response to the defendant's statement of undisputed material facts, ARC maintains the authority to enforce the CBA and its attendance

---

[2] MetLife did not write the short-term disability policy in the CBA; MetLife simply wrote a summary plan description used to inform employees of the benefits available to them as employees of ARC.

[3] When the plaintiff called in sick after her multiple requests for leave or a temporary lay-off were denied, ARC doubted the veracity of her claims. An investigator hired by ARC went to a Webb High School football game during the plaintiff's final absence from work because the plaintiff's son was playing in a playoff game that evening. The investigator videotaped the plaintiff standing, walking, and even jumping up and down for two hours at the game without once resting her knee.

8

policy.  MetLife's reasoning for disregarding the 30-day requirement in the CBA is not set forth in the pleadings, and its decision to grant benefits is irrelevant when ARC irrefutably retains the authority to maintain and enforce the CBA's attendance policy.

Because the plaintiff has not introduced any evidence into the record of similarly situated employees being granted short-term disability leave (and therefore not receiving an occasion point) despite being ineligible for such leave under the terms of the CBA, the plaintiff has not established a *prima facie* case for discrimination.  Finally, even if she had established all four elements of her Title VII claim, ARC has proffered a legitimate, non-discriminatory reason for terminating the plaintiff, and the plaintiff has failed to introduce any evidence whatsoever supporting her contention that ARC's reason was pretextual.  The plaintiff admits that there is no evidence to suggest that her supervisors or anyone else at ARC was motivated by a discriminatory animus toward her, the plaintiff did not allege discrimination in her grievance, and the plaintiff never had any issues with her supervisors while she was employed with ARC.

IV.

Because the plaintiff cannot establish a *prima facie* case under Title VII, and because her claims under the Tennessee Human Rights Act are barred by the statute of limitations, ARC's motion for summary judgment [R. 18] is **Granted**.  This case will be **dismissed** in its entirety.

ENTER:

_____
**UNITED STATES DISTRICT JUDGE**